*In re* HENRY

1. CONTEMPT—IRREGULARITIES—JURISDICTION—WAIVER.

The defendant, by taking the stand and. testifying in his own defense to contempt charges specified in an affidavit, did not waive all irregularities in the initiatory process of the contempt proceedings where he strenuously objected to the jurisdiction of the court, not only as to the initiating process, but also as to the validity of the affidavit.

2. CONTEMPT—ATTORNEY'S TARDINESS—FAILURE TO APPEAR.

An attorney's tardiness or failure to appear in court as scheduled is a contempt not committed in the immediate view and presence of the court.

REFERENCES FOR POINTS IN HEADNOTES

[1] 17 Am Jur 2d, Contempt §§ 83, 86.
[2] 17 Am Jur 2d, Contempt §§ 6, 7. ,
[3] 17 Am Jur 2d, Contempt § 88.
[4–6] 17 Am Jur 2d, Contempt §§ 82, 83.
[7, 9–12] 17 Am Jur 2d, Contempt § 25.
  Attorney's failure to attend court, or tardiness, as contempt.   97 ALR2d 431.
[8] 17 Am Jur 2d, Contempt § 8.

3. Contempt—Contempt Not in Presence of Court—Initiating Action.

A proceeding for a contempt not committed in the immediate view and presence of the court is initiated by an *ex parte* motion supported by an affidavit charging contempt.

4. Contempt—Contempt Not in Presence of Court—Jurisdiction —Affidavit.

A court charging a contempt not committed in its immediate view or presence does not have jurisdiction over the matter if there has not been a valid affidavit initiating the action.

5. Contempt—Initiating Action—Affidavit—Actual Knowledge.

An affidavit filed in initiating a proceeding for a contempt not committed in the immediate view and presence of the court is valid only if it is made by one who has actual knowledge of the facts stated in the affidavit and if it states facts which constitute the commission of contemptuous conduct.

6. Contempt—Failure To Appear—Affidavit—Actual Knowledge.

An affidavit was sufficient for the purpose of jurisdiction in a contempt proceeding even though some of the facts alleged in the affidavit were based on notations from the court file, not on the affiant's personal knowledge, where the contempt was for the attorney's failure to appear in court as scheduled and where the affidavit showed that the defendant had been properly notified of the time and place of his client's trial and had failed to appear, because the requirement of an affiant's personal knowledge must be viewed in light of the contemptuous conduct charged.

7. Contempt—Failure To Appear—Willful Misconduct.

An affidavit in contempt proceedings against an attorney for his failure to appear in court to defend his client was sufficient even though it did not state acts indicating willful neglect of duty where the affidavit did show that the defendant had been notified of the time and place of his client's trial and had failed to appear, because attorneys are accountable for any misbehavior in their office or trust.

8. Contempt—Intent—Presumptions.

The intent of a defendant charged with contempt of court may be inferred from his acts; a defendant is presumed to have intended the natural and probable consequences of his acts.

9. CONTEMPT—ATTORNEY AND CLIENT—FAILURE TO APPEAR.

Any absence of an attorney from a courtroom or other place where he has a duty to appear before a judge or another officer of a court at a specified time for the purpose of participating in a trial, hearing, or other proceeding in which he is counsel for a party, or of taking a step necessary in the prosecution of litigation, including an appeal, generally may constitute contempt, unless the default is because of the attorney's inability or incapacity to be present without fault on his part; this rule may be invoked whether the tardiness or absence is because of the attorney's inadvertence or deliberate design.

10. ATTORNEY AND CLIENT—OFFICERS OF COURT—DUTY TO APPEAR.

An attorney has a duty, as an officer of the court, to be in court upon the trial of a cause duly set for trial of which he has had due notice.

11. CONTEMPT — ATTORNEY AND CLIENT — FAILURE TO APPEAR — DEFENSES — INADVERTENCE.

An attorney's failure to appear in court at an appointed hour, absent a justifiable excuse, constitutes contemptuous conduct and the inadvertence of the attorney in keeping himself informed of trial dates is not a valid basis for voiding a contempt conviction.

12. CONTEMPT—EVIDENCE—ATTORNEY AND CLIENT—FAILURE TO APPEAR.

Testimony of a court employee that, as shown by the court files, a letter had been sent to the defendant four weeks prior to the trial informing him of the trial date and evidence that the trial judge and his courtroom clerk knew that the defendant failed to appear for the trial were sufficient to sustain a contempt conviction of an attorney for failure to appear in court and try a case as scheduled.

Appeal from Recorder's Court of Detroit, Joseph A. Gillis, J. Submitted Division 1 April 14, 1970, at Detroit. (Docket No. 8,329.) Decided June 26, 1970. Rehearing denied August 5, 1970. Leave to appeal denied November 25, 1970. 384 Mich 783.

Milton R. Henry was convicted of contempt of court. Defendant appeals. Affirmed.

*Milton R. Henry, in propria persona.*

*Amicus Curiae: Charles T. Burke.*

Before: QUINN, P. J., and T. M. BURNS and O'HARA,* JJ.

O'HARA, J. On July 31, 1969, Detroit Recorder's Court Judge Joseph A. Gillis issued the following order to show cause:

"This order to show cause is brought and initiated by the court of its own motion based upon the attached affidavit of official court clerk, Robert Herbertson, and further based upon the court's own knowledge of the fact that respondent herein did not appear to try the case of *People v. Otis Fenderson,* although he is and was attorney of record for the defendant herein, and had previously secured an adjournment from the court in the said case. That the court has examined the file and knows that attorney Henry was duly notified of the date and time of trial. The court also was personally present each time the case was called and knows that respondent did not answer the call, nor did he appear either on July 28th, 1969, the first trial date, nor on the adjourned trial date, July 29th, 1969 at any time during the court's session.

"The cause is initiated by the court pursuant to GCR [1963], 760 and CL 1948, § 600.1701 following.

"It is therefore ordered and the court does order that Milton R. Henry, attorney, named respondent herein, appear on Friday, August 29th, 1969 in the courtroom of Judge Joseph A. Gillis, Judge of Recorder's Court on the fourth floor of the Recorder's Court Building, 1321 St. Antoine Street, Detroit,

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23, as amended in 1968.

Michigan 48226, and there show cause why he should
not be punished for his contempt.

"The contempt charged herein is respondent's
willful neglect as an attorney to appear in court
and try the case No. A–140653, where he is attorney
of record, and which case was to his knowledge set
for trial on July 28th and again adjourned to July
29th, 1969. That the failure of respondent to so ap-
pear and try the case resulted in a disruption of
court process and orderly procedure. That it also
resulted in further congestion of an already crowded
docket. That it became necessary because of re-
spondent's 'failure to appear' to adjourn the case
although the people and their witnesses were pres-
ent, ready for trial, as was the defendant herein, who
is and was this respondent's client. That these facts
indicate the contempt for orderly court procedure
as exhibited by this respondent.

"That failure to appear at the time and place set
will result in the issuance of an order of arrest for
said respondent because of such failure."

The following affidavit of Robert Herbertson was
attached to the order :

"Robert Herbertson, being duly sworn, says that
he is the official courtroom clerk attached to the
courtroom of the Honorable Joseph A. Gillis, a
judge of Recorder's Court, and that as such clerk,
one of his official duties is the calling of cases ready
for trial, and the making of notations concerning the
progress of cases assigned for any reason to Judge
Gillis.

"He is familiar with the case of *People* v. *Otis Fen-
derson,* number A–140653. That to his knowledge
the attorney of record for defendant in that case
is one Milton R. Henry, who filed his appearance
on July 25th, 1968, which appearance is in the file.
That in said notice of appearance, which is signed
by Milton R. Henry, his address is given as 518
Orchard Avenue, Pontiac, Michigan, zip code 48053,

telephone number FE 4–5823. That said case as affiant's notations on the file show, was originally set for 10–21–68 and adjourned at the request of Mr. Henry, who was in a trial elsewhere. That an examination of the file shows that a formal notice that the case was assigned to Judge Gillis to be tried on Monday, July 28, 1969 at 9 o'clock is in the file, which notice added that there would be no adjournments granted except upon order of the Presiding Judge 'for a contingency which could not have been anticipated.' That the inside cover of the file shows that said notice was given to Mr. Henry 7–1–69 by deputy clerk, R. Jones. That on Monday, July 28th, affiant called the case for trial. That the prosecutor and people's witnesses were present, and the defendant, himself was present, but his attorney did not appear, although affiant called the case several times. That defendant stated that he had been contacted by Mr. Henry and told that the case would be tried on July 28th.

"Affiant also states that he sent a telegram to attorney Henry at the address given on his notice of appearance stating that the case was adjourned until Tuesday, July 29, 1969, and that he was to appear. That when the case was again called, and the people were ready for trial on Tuesday, July 29th, attorney Henry neither appeared nor did he send a reply. That affiant is informed and believes that attorney Henry was actually in the court building on July 30th but did not come to Judge Gillis' court nor send a representative."

A hearing on the contempt order was held before Judge Gillis on August 29, 1969. At the conclusion thereof, respondent was convicted of contempt and sentenced to 15 days in jail, to be served on successive weekends. The execution of the sentence was stayed pending appeal.

It is worthy of note that respondent, who was scheduled to appear before this Court and argue

orally in his own behalf, failed once again to be present.

In deciding the case as if submitted on briefs, the initial question presented is whether the trial court had proper jurisdiction to order respondent to show cause why he should not be held in contempt. Prefatorily, we note the inappropriateness of the allegation by the *amicus curiae* that respondent, by taking the stand and testifying in his own defense to the charges specified in the affidavit, waived "all irregularities in initiating the proceedings". *In re McHugh* (1908), 152 Mich 505, 511. In that case, the Court stated at pp 510–512:

"The first legal question presented is, that the acts constituting the contempt were not committed in the presence of the court, and no petition or affidavit was presented to the court as a foundation for the proceedings. Upon this point many authorities are cited by counsel for the people and for the respondents. It is unnecessary to determine this question. The respondents voluntarily appeared in court, and were given the same opportunity to make their defense that they would have had upon the filing of a petition or affidavit and the issuance of an order to show cause. They were not seized upon the capias, but came directly from a foreign country into the court and voluntarily submitted to its jurisdiction. It should require no argument to show that they had waived all irregularities in initiating the proceedings.

\*       \*       \*

"If the respondents had refused to appear in court, as was the case in [*In*] *Re Wood* [1890], 82 Mich 75, or if they had been arrested upon the *capias* and had denied the jurisdiction of the court for the reason that no affidavit or petition was presented to the court setting forth the facts, the respondents would have been in position to raise this question, but their conduct waived it. They voluntarily placed

themselves in precisely the same position as they would have been if the proceeding had been such as they now contend was necessary."

The above holding was followed in *In re Huff* (1958), 352 Mich 402. In neither of these cases, however, did the alleged contemnor specifically challenge, at the time of his appearance, the jurisdiction of the court. In this case, respondent strenuously objected to the jurisdiction of the court, not only as to the initiatory process, but as to the validity of the affidavit. Clearly, in this case, there was no waiver.

MCLA § 600.1701 (Stat Ann 1962 Rev § 27A.1701) provides:

"Supreme court, circuit courts, and all other courts of record, have power to punish by fine or imprisonment, or both, persons guilty of any neglect or violation of duty or misconduct in the following cases:

*        *        *

"(3) *All attorneys,* counselors, clerks, registers, sheriffs, coroners, and all other persons in any manner duly elected or appointed to perform any judicial or ministerial services, *for any misbehavior in their office or trust, or for any willful neglect or violation of duty,* for disobedience of any process of the court, or any lawful order of the court, or any lawful order of a judge of the court or of any officer authorized to perform the duties of the judge." (Emphasis supplied.)

The above statute is supplemented by GCR 1963, 760. Rule 760.1 reads:

".1 Initiation of Proceeding. For contempts not committed in the immediate view and presence of the court, *upon a proper showing on ex parte motion supported by affidavits,* the court shall either order the accused party to show cause at some reasonable time, to be therein specified, why he should

not be punished for the alleged misconduct, or shall issue a bench warrant for the arrest of such party." (Emphasis supplied.)

Since Michigan has adopted the majority view that an attorney's tardiness or absence constitutes a contempt "not committed in the immediate view and presence of the court" (See *In re McHugh* [1908], 152 Mich 505; Annotation, 97 ALR2d 431, 435, 460), the foundation for this type of contempt proceeding must be laid by affidavit. GCR 1963, 760.1; *In re Scott* (1955), 342 Mich 614. Absent a valid affidavit, no jurisdiction attaches. *In re Wood* (1890), 82 Mich 75; *Russell v. Wayne Circuit Judge* (1904), 136 Mich 624. To be valid, an affidavit must be made by one who has actual knowledge of the facts stated in the affidavit. *In re Wood, supra; In re Collins* (1950), 329 Mich 192. In addition, it must state facts which constitute the commission of contemptuous misconduct. *In re Ventchell* (1937), 279 Mich 690. See 5 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), GCR 1963, 760, Author's Comment 5A, p 331.

Respondent's jurisdictional challenge is based on the contention that the affidavit in the present case was defective.

Respondent assumes that under the statute, in order for an attorney's failure to appear in court to be contemptuous, it has to be "willful." For the affidavit to simply state that respondent did not appear in court is, in respondent's view, insufficient in that it doesn't state a fact which constitutes the commission of contemptuous misconduct.

In addition, respondent contends that Robert Herbertson, the court clerk whose affidavit laid the foundation for the entire proceeding, did not witness the contempt or have actual knowledge of it. At the hearing, Mr. Herbertson admitted that the af-

fidavit was not his own work-product, but that of
Henrietta Rosenthal, Judge Gillis's judicial assist-
ant.   At Judge Gillis's direction, Miss Rosenthal
asked Mr. Herbertson some questions, prepared the
affidavit and had it typed.   Mr. Herbertson then
signed it.   Moreover, Mr. Herbertson stated that
some of the facts in the affidavit were not of his own
personal knowledge, but were taken from notations
made on the case file by himself and other court
clerks.   To this extent, respondent contends that the
affidavit was based on hearsay and was therefore
invalid.   See *Randall* v. *Genesee Circuit Judge*
(1953), 336 Mich 335.

From respondent's brief:

"The only two facts within the affiant's own knowl-
edge relate to the non-appearance of the attorney
in Judge Gillis's court, and the sending of a telegram.
"The critical facts, which had to do with matters
beyond the purview of the court, and with the rea-
sons for the attorney's non-appearance, were not
attested to; and it is precisely this omission, which
divests the court of any jurisdiction to issue its order
to show cause against this appellant."

In conclusion, respondent alleges that in light of
the supposedly invalid affidavit the situation was the
same as if no affidavit has been filed.   Therefore,
the judgment rendered was allegedly void.   *In re
Scott, supra.*

Respondent's contention that Mr. Herbertson nei-
ther witnessed the alleged contempt nor had actual
knowledge of it must be viewed in light of the
contemptuous conduct being considered.   As stated
in this opinion, *infra,* all that need be shown is that
respondent attorney was apprised of the time and
place set for his client's trial and failed to appear.
These facts were alleged partially from the personal
knowledge of Mr. Herbertson and partially from

notations in the court file. Under these circumstances, reason dictates that this suffices for purposes of jurisdiction.

Respondent's additional contention that the affidavit failed to state any facts which indicated a "willful" neglect of duty is also without merit. Attorneys are held accountable not only "for any willful neglect or violation of duty", but for "any misbehavior in their office or trust". The contemptuous conduct alleged in this case falls just as easily in the latter category in which "willfulness" is not an element.

Notwithstanding, respondent was here charged with "willful neglect as an attorney to appear in court". Even assuming, *arguendo,* that "willful" intent must be shown, "to demand proof of defendant's wrongful state of mind would emasculate the contempt power. Apparently the policy maintaining the effectiveness of contempt proceedings has prevailed, for it is generally held that intent may be inferred from the act—defendant is presumed to intend the natural and probable consequences of his act." 48 Michigan L Rev 860, 865, 866 (1950).

In his brief, the *amicus curiae* contends that the affidavit makes a *prima facie* showing that respondent was notified and failed to appear for trial, that willfulness is not a statement of fact which is the proper subject matter of an affidavit, and that only a total absence of a showing of facts justifying the issuance of an order to show cause warrants reversal on appeal. *Montgomery* v. *Muskegon Circuit Judge* (1894), 100 Mich 436; *Campbell* v. *Judge of Recorder's Court* (1928), 244 Mich 165; *Randall* v. *Genesee Circuit Judge* (1953), 336 Mich 335.

Despite respondent's assertions that the cases cited by the *amicus curiae* do not support the proposition for which they were offered, the rule ex-

pounded therein is clear. In *Montgomery* v. *Circuit Judge, supra,* 440, 441, the court responded to the allegation that "charges must be supported by positive statements in affidavits made by person having knowledge of the facts,—that statements on information and belief are not sufficient."

The Court replied:

"This is true, but the rule does not exclude the drawing of inferences from established facts. Each of the facts recited was shown by positive testimony, and the inference to be drawn from these statements was one which Judge Dickerman certainly had the right to draw; and his decision as to whether there was sufficient basis for issuing the order to show cause can only be reversed in case of a total absence of a showing of facts justifying such action."

This ruling was followed in *Campbell, supra,* and *Randall, supra.*

The second question presented is whether there was sufficient evidence to sustain the contempt conviction. Again, respondent overlooks the sanction against "any misbehavior in their office" and argues that he can only be punished for "willful neglect or violation of duty." MCLA § 600.1701, *supra.* Moreover, respondent takes the position that his testimony that he lacked *actual* notice or knowledge of the trial precludes any contempt. This latter point was the sum and substance of his testimony at the hearing.

At the hearing, Miss Ann Womack, an employee in the recorder's court clerk's office, testified from the court file that a notice had been sent to respondent on July 1, 1969, notifying him of the trial date of July 28, 1969.

In addition, Mr. Herbertson testified that on July 28, 1969, respondent's client and the people and their witnesses were present, but that respondent was not.

He stated further that he sent a telegram to respond-
ent that afternoon informing him that the trial was
set over until the morning of July 29, 1969. Receipts
from Western Union indicated that the telegram
could not be delivered on July 28, but that on July
29 the telegram was slipped under respondent's
office door.

Respondent testified that on the day of his client's
trial he was out of the state, that his office was
closed on July 28 and July 29, and that the trial
date did not appear on his calendar book.

The trial court made the following findings of
fact:

"Well, the court will find as a matter of fact that
the written notice was sent out by Ann Womack
on the 1st day of July, 1969, by the United States
mails to the office address of the respondent Milton
R. Henry and not returned.

"The court will find that due notice was published
in the official paper of the recorder's court, the De-
troit Legal News, setting the trial of the *People
versus Otis Fenderson* for trial on July 28th.

"The Court will further find that Mr. Fenderson
showed up in court; and he got knowledge some-
where, I don't know where. I'm sure it's not from
the Detroit Legal News, although there is a remote
possibility he might be a devoted reader of the
Detroit Legal News.

"Mr. Fenderson was in court; the detective was
in court; and the complaining witness was in court
on that date.

\*     \*     \*

"I will find that there was wilful and negligent
contempt of court in failing to read the messages
from this court and failing to appear in this court.

"And I will find Mr. Henry in contempt."

There is a comprehensive annotation entitled "At-
torney's failure to attend court, or tardiness, as

contempt", at 97 ALR2d 431.  The annotation is summarized as follows:

"In the United States, as a general rule, any absence of an attorney from a courtroom or other place where he has a duty to appear before a judge or other officer of the court at a specified time for the purpose of participating in a trial, hearing, or other proceeding in which he is counsel for a party, or of taking a step necessary in the prosecution of litigation, including an appeal, may constitute a contempt, *unless the default is due to the attorney's inability or incapacity to be present without fault on his part.*" (p 433, emphasis supplied.)

*          *          *

"The rule  *  *  *  may be invoked whether the tardiness or absence is due to inadvertence, or to deliberate design." (pp 433, 434.)

*          *          *

"[W]hile it appears in most of the cases discussed herein that defaulting counsel had received actual notice of the time his case was scheduled for trial or hearing from the court or one of its officers, or from opposing counsel, in principle it would seem, as one case suggests, that liability to punishment would not necessarily depend on rules and practice to ascertain for himself when his case will be reached." (p 434, citing *Nelson* v. *Wergland* (1929), 104 NJ Eq 334 [146 A 32]).

Respondent's argument is incompatible with his duty as an officer of the court "to be in court upon the trial of causes duly set for trial of which they have had due notice." *In re McHugh, supra,* 509. As stated in *United States* v. *Anonymous* (1963), 215 F Supp 111, 113, 114:

"Lawyers are officers of the court and the courts have a duty to supervise their conduct.  *  *  * Courts are required mandatorily to exercise this

duty to preserve judicial decorum and to enforce the respectability of the legal profession. * * * Lawyers have a duty, not only to their clients, but to the courts, to attend court sessions punctually. * * * Canons of Professional Ethics, American Bar Association, canon 21. Attorneys must not allow their private interests to conflict with those of their clients. * * * They owe their entire devotion to the interests of their clients. Canons, *supra,* canon 15.

" 'To have the assistance of counsel for his defense' " is a guaranty extended to every defendant by the Sixth Amendment.

* * *

"Criminal trials cannot proceed unless the constitutional guaranties of the defendant are fully met, *and the petitioner's forgetfulness of his duty to the court and his client demonstrates his contempt.* * * * An unnecessary burden was thereby placed on the federal treasury, and inconvenience was caused many also ordered to be present and who were in their appointed places at the proper time." (Emphasis supplied.)

See also *Arthur v. Superior Court of Los Angeles County* (1965), 62 Cal 2d 404, 411 (42 Cal Rptr 441, 446, 398 P2d 777):

"When an attorney fails to appear in court with his client, particularly in a criminal matter, the wheels of justice must temporarily grind to a halt. The client cannot be penalized, nor can the court proceed in the absence of counsel. Having allocated time for this case, the court is seldom able to substitute other matters. Thus, the entire administration of justice falters. Without judicious use of contempt power, courts will have little authority over indifferent attorneys who disrupt the judicial process through failure to appear."

In *Kandel v. State* (1969), 252 Md 668 (250 A2d 853), the petitioner had been found in contempt "for

failing punctually to appear at the trial of an accused whom he represented." (p 669.) On appeal, the court prefaced its decision by stating the rule that in "passing on disciplinary action taken by a trial judge, appellate courts in various jurisdictions have taken the view that they will not weigh the evidence but only assess its sufficiency. (p 672, citing *In re McHugh, supra*).

The Maryland statute provided that "the misbehavior of any officers of the said courts in their official transactions" constituted grounds for contempt. In upholding the contempt conviction, the court stated at 671:

"Unjustified failure of an attorney to appear in court on time is at least misbehavior on the part of an officer of the court as Canon 21 of the Canons of Professional Ethics, Maryland Bar Association (Maryland Lawyers' Manual, 1969 Ed, p 22) shows. See *Nelson* v. *Wergland* (1929), 104 NJ Eq 334 (146 A32). Our holding in *Weaver* v. *State* (1966), 244 Md 640 (224 A2d 684), indicated that failure to appear in court in violation of an oral order was contemptuous on its face. See *United States* v. *Anonymous* (ED Tenn, 1963), 215 F Supp 111; *In re Shorter* (DC Mun App, 1967), 236 A2d 318; *In re Saul* (DC Mun App, 1961), 171 A2d 751; *Lyons* v. *Superior Court of Los Angeles County* (1955), 43 Cal 2d 755, (278 P2d 681), *cert. den.* 350 US 876 (76 S Ct 121, 100 L Ed 774); Anno. 'Attorney-Court Attendance-Contempt,' 97 ALR2d 431, and cases cited therein. In the words of the annotator (p 438), even if there are mitigating circumstances:

" '[A]n attorney's failure to attend court at the time appointed when he has a duty or obligation to be present may amount to, and be punishable as, contempt  *  *  * . In none of the cases decided by the American courts  *  *  * has any court so much as intimated a contrary view.' "

The above authority is relevant and determinative.
Respondent argues about such things as willfulness
and lack of knowledge, but fails to recognize that his
failure to appear at the appointed hour, absent a
justifiable excuse, constitutes contemptuous conduct.
Respondent's asserted inadvertence in keeping him-
self informed of trial dates is not a valid basis
for voiding the contempt. It is not clear how re-
spondent's client received notice of the trial, but
it must be noted that he was present.

Notwithstanding the telegrams, Miss Womack tes-
tied that a letter was sent to respondent four weeks
prior to trial informing him of the trial date. The
judge knew, and the clerk knew, that respondent
failed to appear. Under these circumstances, that's
all that need be shown. There was sufficient evidence
to sustain the contempt conviction.

Affirmed.

All concurred.