*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

ANDRE LEE COLEMAN,

       Defendant-Appellant.

UNPUBLISHED
January 23, 2025
12:10 PM

No. 367241
Bay Circuit Court
LC No. 22-010509-FH

Before: M. J. KELLY, P.J., and LETICA and WALLACE, JJ.

PER CURIAM.

The trial court found defendant in criminal contempt, MCL 600.1715(1), for violating a condition of his bond by contacting the alleged victim of the crimes with which he had been charged, and sentenced him to serve 45 days in jail. Defendant appeals by right. We affirm.

## I. BACKGROUND

On November 9, 2022, the prosecutor filed a felony information charging defendant with assault with a dangerous weapon, MCL 750.82(1), domestic violence, MCL 750.81(2), and assault by strangulation, MCL 750.84(1)(b). On April 1, 2023, the court granted defendant a protective-conditions bond that prohibited him from contacting the complainant. Defendant signed the bond, which advised: "**I further understand if I fail to perform or comply with all of the terms and conditions of this bond, my bond may be revoked, I may be arrested without a warrant, held in contempt of court, new conditions of release imposed, and the full amount of the bond may be forfeited and judgment entered for the entire amount of the bond.**" On May 3, 2023, the court in an off-record proceeding, revoked defendant's bond, noting that a bench warrant would issue after it received the April 26, 2023 police report. Two days later, the trial court entered an order revoking and forfeiting bond, which stated that "Defendant in violation[] of bond conditions[,] has been contacting the victim in this case, according to Bay City Department of Public Safety Police Report Number 23239-01269[.]" The trial court also issued a bench warrant for defendant's arrest that same day. Like the order revoking and forfeiting the bond, it read: "Defendant, in violation[] of bond conditions[,] has been contacting the victim in this case, according to Bay City Department of Public Safety Police Report Number 23239-01269[.]"

Defendant asserts that after his attorney advised him of the issuance of the bench warrant, he turned himself in on May 10, 2023.

Defendant was scheduled to be arraigned on this bond violation on May 15, 2023. During the hearing, defense counsel reported receiving the bench warrant, but said that he had just received the police report. After discussion with defendant, defense counsel asked to withdraw and for an evidentiary hearing. The court said that it wanted to ensure that everything was "clear to" defendant. Defendant said that he had just read the bench warrant and that the police report information differed from those he had secured from dispatch. Defendant explained that he required time to review the materials that defense counsel had not reviewed and requested bond. The trial court explained that "today is an arraignment on the violation of bond hearing" and that it "just want[ed] to make sure that [defendant] [had] read those charges." Defendant responded: "Yes." The court said that it understood that defendant had just received them and asked "[y]ou don't need me to read them to you, correct?" Defendant stated his preference to have the court read the charges into the record. The court replied: "Very good." But defendant continued to speak and eventually asked for fifteen minutes so that he and counsel could review what the complainant had told the police initially. The court explained that it had additional matters set and did not have time for a hearing that day, even though defendant had a right to one. The court noted that the materials had been provided to defense counsel and that defendant had the right to have a hearing within 14 days. After additional discussion, the court set a hearing date on May 25 and said it would appoint new counsel for defendant. A new attorney, defendant's third court-appointed counsel, filed an appearance on May 17.

At the May 25 bond-violation hearing, newly-appointed counsel said that defendant reported that the trial court had not arraigned him. Counsel also noted that the prosecution wanted to add another violation that occurred the prior evening. Further, counsel asked that the hearing be adjourned for a couple of weeks. And, finally, counsel noted that defendant wanted bond.

The trial court noted that its records indicated that defendant had been arraigned; however, defendant insisted that he had not been arraigned and that he had never received a police report. Defendant later recognized that he had received two pieces of paper that the court said were the police report "and the police report we got this morning." At that point, despite what the court's record indicated, the court agreed to "read[] the arraignment script to" him. After defendant continued to deny receiving the "documents," the court provided a copy. The court stated that the allegations against defendant were that he violated his bond by contacting the victim as described in the police report.

A dispute arose regarding whether defendant had requested an adjournment of the hearing. Defendant denied doing so and stated that he was ready for the hearing despite the arraignment not being conducted. The trial court explained that it had just arraigned defendant for the second time, which defendant denied. Defendant also said that he had motions for hybrid representation, for transcripts, and for bond. Defendant further objected to the trial court's untimely arraignment.

Thereafter, the court asked the prosecutor if he was ready to proceed. The prosecutor had spoken to defense counsel and, in light of the recent allegation of another violation, the prosecutor anticipated setting a hearing date on both allegations at the same time. Even so, if the court wished to proceed, the prosecutor was ready to do so.

Although defendant also agreed to proceed, he later clarified that he wished to proceed with a hearing on his motion for bond and not with the bond violation hearing. Defendant expressly agreed to defense counsel's request to set a new date for the bond violation hearing. The court noted that defendant had not been arraigned on the second alleged violation because the court did not have any information about it. The court adjourned the hearing on the bond violation to June 6.

Defense counsel then moved for bond, and defendant moved to dismiss the bond violation because the police report showed that it occurred in another county. The trial court determined that it had jurisdiction over the violation of its bond and it denied defendant's request for bond given the alleged bond violations.

On June 6, 2023, the court held the combined bond-violation hearing. The trial court did not separately arraign defendant on the subsequent bond violation.

At the hearing, the complainant testified that defendant called and left her a voice message directing her to call him a few days before she made her April 26, 2023 report to the police. The complainant also received a text message on May 24, 2023, which read: "Big Boy said the next court hearing at 10:30 a.m. before Woods [sic]. Do you want to resolve the storage unit without moving your stuff? Did you get the flowers?" The complainant explained that she had received three red roses and a potted plant on separate days at the restaurant where she worked. One of them was accompanied by an unsigned note that the complainant recognized as being in defendant's hand-writing. The complainant discarded the note that contained "sweet nothings." The complainant also testified that she had a storage unit that she shared with defendant.

Defense counsel cross-examined the complainant. For the record, defense counsel stated that he had received two police reports from the prosecution: one alleging a contact-based violation around April 26 and the other alleging a separate incident on May 24.

Defense counsel also stated that defendant wanted him to object to the proceeding because defendant claimed that he had yet to be arraigned on the alleged bond violation related to May 24. The trial court indicated that it thought defendant had been rearraigned on May 25, and it proceeded with the hearing. The court found defendant in contempt for the bond violations and sentenced him to serve 45 days in jail.[1]

On September 28, 2023, defendant filed a motion to reverse the court's finding of contempt in the trial court. The trial court directed the prosecution to respond, which it did.

On November 28, 2023, the court heard defendant's motion, treating it as a motion for new trial, after appellate defense counsel agreed that the motion to reverse the contempt was analogous to a request for a new trial or bond violation hearing. Defendant argued that the trial court violated his due-process rights by issuing the bench warrant without an affidavit supporting the

---

[1] The court heard defendant's motion for bond reduction on July 21, 2023. The court recognized that it had not informed defendant of his right to appeal its decision after the contempt hearing and it did so. Defendant filed his claim of appeal on August 9, 2023.

prosecution's ex parte motion as required by MCR 3.606(A) and provided him with insufficient notice of the allegations underlying the bond violations.

The prosecution responded that the defense admitted that it had the police reports at the bond-violation hearing. Further, defendant failed to show that he was prejudiced.

The trial court denied the motion. The trial court stated that defendant's initial attorney had received a copy of the original police report and that his subsequent attorney stated at the June 6 hearing that he had received both reports. Accordingly, the trial court held that defendant had plenty of notice and an adequate opportunity to defend himself at the June 6 hearing. Moreover, the trial court held that even if the notice had been inadequate, defendant did not suffer any prejudice as a result because he still had an adequate opportunity to defend himself at the hearing.

## II. ANALYSIS

On appeal, defendant argues that the trial court violated his right to due process of law because (1) it issued the bench warrant for defendant's arrest without the prosecution providing a supporting affidavit, (2) the court provided defendant with inadequate notice of the allegations underlying the alleged bond violations and did not provide him with an adequate opportunity to present a defense, and (3) it found him in contempt for the alleged May 24 contact with the complainant despite this not being part of the original bench warrant. We disagree.

## A. STANDARD OF REVIEW

This Court "review[s] de novo the issue whether a defendant was denied his right to due process." *People v Smith*, 319 Mich App 1, 5; 900 NW2d 108 (2017).

This Court "review[s] a trial court's decision to hold a party in contempt for an abuse of discretion." *In re SB*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367014); slip op at 6 (quotation marks and citation omitted). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes." *Id.* (quotation marks and citation omitted). "The nature of the contempt order and whether the contempt statute permitted the sanctions imposed are questions of law that are reviewed de novo . . . . [T]he trial court's factual findings in a contempt proceeding are reviewed for clear error, and we must affirm if there is competent evidence to support them." *Id.* (quotation marks and citation omitted). "Clear error exists when this Court is left with the definite and firm conviction that a mistake was made." *Id.* (quotation marks and citation omitted).

## B. DISCUSSION

There are two types of contempt proceedings in Michigan: summary and nonsummary. See *In re Contempt of Murphy*, 345 Mich App 500, 509; 7 NW3d 72 (2023), oral argument gtd on the application 513 Mich 948 (2023). Summary contempt proceedings may be used to punish

"direct contempt." *Id*. at 503 (quotation marks and citation omitted); see also MCL 600.1711(1).[2] "A summary proceeding is meant to address and punish contemptuous behavior immediately. . . . No charges are filed and no evidence is taken—the judge is, in a real sense, the victim, prosecutor, judge, and jury." *Id*. at 509 (quotation marks and citation omitted). "The use of summary contempt power is proper only for charges of misconduct, in open court, in the presence of the judge, . . . actually observed by the court, and where immediate punishment is essential to prevent demoralization of the court's authority before the public." *Id*. at 510 (quotation marks and citation omitted).

On the other hand, nonsummary criminal-contempt proceedings are used to address and punish indirect contempt, i.e., "allegedly contemptuous behavior that has occurred outside the judge's direct observation in open court; for example, a party's failure to follow a court's written order." *Id*. at 503, 510; see also MCL 600.1711(2).[3] "[N]onsummary criminal-contempt proceedings are much more akin to a traditional criminal bench trial." *Id*. at 510.

"[C]riminal contempt proceedings encompass many of the same due process safeguards available to defendants charged with traditional crimes." *In re SB*, ___ Mich App at ___; slip op at 8 n 8 (quotation marks and citation omitted). In nonsummary contempt proceedings, "a criminal contemnor is entitled to the presumption of innocence, protection from compelled self-incrimination, an adequate opportunity to prepare and present a defense, and a right to have the contempt proved beyond a reasonable doubt." *In re Contempt of Pavlos-Hackney*, 343 Mich App 642, 671; 997 NW2d 511 (2022). This includes a right to "notice of [the] charges, the assistance of counsel, and a public hearing." *In re Contempt of Murphy*, 345 Mich App at 510.

1. MCR 3.606(A)

MCR 3.606 provides:

(A) ***Initiation of Proceeding.*** For a contempt committed outside the immediate view and presence of the court, *on a proper showing on ex parte motion supported by affidavits*, the court shall either

(1) order the accused person to show cause, at a reasonable time specified in the order, why that person should not be punished for the alleged misconduct; or

(2) issue a bench warrant for the arrest of the person. [Emphasis added.]

Proceedings for a contempt that occurs outside of the presence of the court "must be initiated through an ex parte motion supported by an affidavit of facts showing the alleged

---

[2] "When any contempt is committed in the immediate view and presence of the court, the court may punish it summarily by fine, or imprisonment, or both." MCL 600.1711(1).

[3] "When any contempt is committed *other than in the immediate view and presence* of the court, the court may punish it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend." MCL 600.1711(2) (emphasis added).

contemptuous conduct." *In re Contempt of Robertson*, 209 Mich App 433, 438-439; 531 NW2d 763 (1995). However, under MCL 600.1711(2):

> When any contempt is committed other than in the immediate view and presence of the court, the court *may punish* it by fine or imprisonment, or both, after proof of the facts charged has been made by affidavit or other method and opportunity has been given to defend. [Emphasis added.]

Accordingly, while the trial court may *punish* a defendant for contempt committed outside its presence without "proof of the facts charged . . . made by affidavit," see *id*., to properly *initiate* an indirect contempt proceeding, the charges must be presented by an affidavit-supported ex parte motion, see MCR 3.606(A). The issue of an affidavit-supported ex parte motion that initiates indirect contempt proceedings relates to whether the court has personal jurisdiction over the defendant. See *Ferranti v Electrical Resources Co*, 330 Mich App 439, 446; 948 NW2d 596 (2019). Accordingly, if a defendant appears in court and fails to object to the lack of such an affidavit, the argument may be deemed waived. See *In re Contempt of Barnett*, 233 Mich App 188, 193; 592 NW2d 431 (1998); see also *Porter v Porter*, 285 Mich App 450, 462; 776 NW2d 377 (2009); *In re Henry*, 25 Mich App 45, 51; 181 NW2d 64 (1970).

In this case, though the contempt procedure was defective, the court still had jurisdiction over defendant with respect to the contempt charge. Review of the record confirms that no supporting affidavit was filed to support the bench warrant. However, defendant did not raise this issue until filing his motion to reverse the finding of contempt. By appearing at the bond violation hearing on June 6, 2023, he consented to the trial court's jurisdiction over him and waived any objection under MCR 3.606(A). See *In re Henry*, 25 Mich App at 51. Therefore, he is not entitled to reversal of his contempt conviction based on a violation of MCR 3.606(A).

## 2. NOTICE AND THE OPPORTUNITY TO PRESENT A DEFENSE

Under the Due Process Clause to the Fourteenth Amendment, a criminal defendant is entitled to fair notice of the conduct that will subject him to punishment. *People v Hall*, 499 Mich 446, 461; 884 NW2d 561 (2016). This notice must be reasonable. See *People v McGee*, 258 Mich App 683, 699; 672 NW2d 191 (2003). A defendant's right to present a defense includes "a right to examine the witnesses against him, to offer testimony, and to be represented by counsel." *Id*. at 699 (quotation marks and citation omitted). "To establish a due process violation, a defendant must prove prejudice to his defense." *McGee*, 258 Mich App at 700; see also *People v Gaines*, 306 Mich App 289, 298; 856 NW2d 222 (2014) (quotation marks and citation omitted) ("Prejudice is essential to any claim of inadequate notice."). Thus, for example, when a trial court fails to formally arraign a defendant on each charge, he must show that he was prejudiced by this to be entitled to relief. See *People v Henry (After Remand)*, 305 Mich App 127, 159; 854 NW2d 114 (2014).

Defendant's second argument is that he was deprived of his right to due process of law because he was given insufficient notice of the allegations underlying his bond-violation charges, and, therefore, provided an inadequate opportunity to present a defense. We disagree.

At the May 25 hearing, defendant was informed that he was being charged with the first bond violation because he was accused in a recent police report of contacting the complainant. Moreover, before his actual bond violation hearing on June 6, defendant's attorney was in possession of the police reports describing his alleged contacts with the complainant on April 26 and May 24. Defendant also had the opportunity to listen to the complainant's testimony, and defendant's counsel had the opportunity to cross-examine the complainant and argue that defendant did not violate his bond. Therefore, defendant knew the substance of both alleged bond violations and had the ability to prepare for as well as to participate in the bond violation hearing. And defendant offers no argument as to how he was prejudiced by the allegedly insufficient notice.

Defendant received reasonable notice of the specific offenses he was charged of committing and the basic substance of those charges. See *In re Contempt of Henry*, 282 Mich App 656, 672; 765 NW2d 44 (2009). Defendant had an adequate opportunity to defend himself at his June 6 bond-violation hearing. More specifically, defendant had the assistance of counsel, his counsel questioned the complainant, and defendant had the opportunity to testify in his defense. See *McGee*, 258 Mich App at 699. Because defendant has not demonstrated that he suffered prejudice to his ability to present a defense based on allegedly deficient notice of the charges, he has not established a due process violation. See *id*. at 700.

Defendant further argues that his due-process rights were violated when the trial court found him in contempt for the May 24 bond violation because it was not in the original bench warrant. For the same reasons already discussed, this argument lacks merit. The authority that defendant appears to rely on, *Ex Parte Gilliland*, 284 Mich 604, 613; 280 NW 63 (1938), holds that where a charge of contempt "partly depends upon [conduct] which took place outside of the court and prior to the hearing, the contemnor is entitled first to have proper charges preferred against him so that he may answer them and prepare his defense."[4] It does not follow from this that the trial court was not allowed to consider contemptuous conduct not included in the original bench warrant. Rather, *Gilliland* merely supports the already stated proposition that a contemnor has the right to reasonable notice and the opportunity to present a defense. See *id*.; see also *McGee*, 258 Mich App at 699.

Defendant provides no evidence that the court's consideration of this conduct caused him prejudice. After making the bare statement that the trial court deprived him of due process by considering conduct that was not in the original warrant, defendant merely points out that he was not arraigned on the second bond violation charge for his May 24 text to the complainant. As we have already noted, this does not establish that defendant suffered prejudice to his right to prepare and present a defense. Accordingly, this technical error did not violate his due-process rights and defendant is not entitled to a new trial.

Affirmed.

/s/ Michael J. Kelly
/s/ Anica Letica
/s/ Randy J. Wallace

---

[4] Defendant does not cite any other authority to support this argument.